Our third case is Open Justice Baltimore v. Baltimore City Law Department. We have Professor Safstrom. Apologies, Your Honor, if I was premature in standing up. My name is Jennifer Safstrom. I teach the First Amendment Clinic at Vanderbilt Law School. And it's my honor today to present two students who will deliver argument for plaintiff's appellants. And I wanted to introduce both Mr. Jacob Robbins, who will deliver the affirmative argument, and Ms. Chelsea Summers, who will deliver rebuttal. And I will also note this honor exceeds only my own in having first delivered oral argument before this court many years ago. And so I'm excited to extend the same privilege to the next group following behind us. It's good to have you come back. You're their professor. Yes. Yes, I am. Their class. What do you call it? The clinic? It's the First Amendment Clinic. First Amendment Clinic. Well, we really appreciate you all being with us and helping us out with this. Mr. Robbins?  And you're a third-year student? Yes, Your Honor. Good to have you here. It's good to be here, Your Honor. Thank you. Good morning, and may it please the court. My name is Jake Robbins on behalf of the appellants, and I am joined by my co-counsel, Chelsea Summers. The issues in this case concern the First Amendment's protection of those who seek public records without fear of retaliation or discrimination from the government for their speech, and specifically the proper standard to review such issues at the motion-to-dismiss stage. The motion-to-dismiss standard requires that the court assume the facts from the vantage point of the plaintiffs and draw all reasonable inferences in their favor. Our clients sought to bring transparency to their local government by publishing materials that shed light on the Baltimore Police Department's practices. Because they exercised their First Amendment right to publish these materials, their local government repeatedly delayed responses, narrowed requests, and charged exorbitant fees to review files under the Maryland Public Information Act. These facts, if taken as true as must be done at this stage, cognize a First Amendment claim for the following three reasons. First, plaintiffs pled a plausible retaliation claim as our clients previously aired criticism of defendants, so it is plausible that defendants delayed and obstructed requests because of previous criticism rather than making simple determinations under the MPIA. Second, plaintiffs pled a plausible viewpoint and content discrimination claim as our clients previously criticized police conduct, so it is plausible that defendants selectively delayed and denied requests because of their viewpoint and the content of misconduct-related files. And third, plaintiffs pled a plausible municipal liability claim as they can establish a practice so persistent and widespread as to constitute custom with force of law, that custom being obstruction of production or other theories of municipal liability in the alternative. I would like to begin with the retaliation argument. So could I ask a question before you get into that, just so I kind of, at least in my own mind, get my bearings straight? Your client, and you just mentioned this, has criticized the Baltimore Police Department and city, and a lot of your argument is that that creates a plausible basis for the conduct that you challenge. In thinking about this, it seems like it's not uncommon, maybe even it is common, that a lot of people or entities that request records may have a political affiliation, but yet the Act provides, has provisions where a municipality can object or limit what gets produced or redact or seek fees and all that information. So it seems like there must be more, more must be required than knowledge of an entity's political views, even critical political views, and exercising statutory rights. And in kind of weeding through your arguments, it seems, in the court's decision, it seems like those might be, what else is required might be some direct evidence of disfavor of content. It might be comparisons with other entities, and it might be just actions that are so frivolous that on their face there must be some other explanation. And the court seemed to address those issues, and I know you disagree with them, but just from a framework, is that an accurate way of looking at what must be proved? Is there something else there that I'm missing? I mean, does that help? Yes, Your Honor. I would only, I guess, specify further what you just laid out in that The further evidence that you referenced, what is more is borne out under the retaliation and the viewpoint and content discrimination claims under their various requirements. You mentioned comparators, which I'd be happy to get into under the viewpoint claim, and also the causation element of the retaliation claim. With evidence here, with temporal proximity as an indicator of retaliation, we can see in that one of the forms of protected speech in this case is lawsuits filed by Open Justice Baltimore. And in one instance, Open Justice Baltimore had requested that detective diesels filed be provided to them at no cost. And then suit was filed in June 2022, and less than three months later, the police department then imposed a $7,000 fee for production. So that's one indication beyond, and that further substantiates the retaliation at hand. But there's other indicia for the other plaintiffs as well. Mr. Soderberg had published a book specifically on the police department's gun task force, and he is a regular journalist on issues of police misconduct in the Baltimore community. And he had sought these misconduct-related records that directly correlate with the type of materials he's published, like that book, that indicate further that they are retaliating against a particular viewpoint, that is speech that is critical of police misconduct practices. I'd also raise that the district court, as you mentioned their opinion briefly, made a factual determination that these allegations suggest bureaucratic dysfunction instead of retaliatory motive, and imposed a heightened causation standard under the previously discussed prong that is designed for summary judgment, and in that sense erred. In Tobey, this court did not wade into the question of whether defendants' actions were in that case reasonable, in that the arrest was made because of plaintiff's outlandish behavior in that case, or because of protected speech. Here, the district court erred by drawing such a determination in ascribing defendants' conduct to bureaucratic dysfunction instead of retaliation. Also in Tobey, the court noted that defendants in that case erred by citing the more rigorous causation of a requirement that applies at summary judgment, and the district court in this opinion cited Raub v. Campbell of this court, which is a summary judgment case laying out that heightened requirement. That application is also error. To move to the viewpoint and content claim, sorry, briefly, your honor, we just discussed the third prong in the district court's error, but I'd just briefly, moving backwards, like to raise the second prong of retaliation, and note that defendants' retaliatory action did adversely affect plaintiff's speech, in that it hindered their ability to criticize the police department. The standard for this is an objective inquiry asking whether the action taken would chill a person of ordinary firmness from exercising their rights, per ACLU of Wacomico County and Snowy and Bosby-Curtis, both of this court. It is not a question of the plaintiff's actual response, per Martin B. Duffy of this court. And applying that here, plaintiffs previously aired criticism of defendants' practices, as we've discussed, and then defendants obstructed production of record requests, and in some sense you can imagine it as really a stick to bring critical voices into alignment, because as investigative journalists and a nonprofit that maintains a website detailing police mispractices and other sorts of investigative journalism, they need to substantiate their publications with things akin, and in this instance they need the police misconduct files themselves. So when they obstruct the production, it leads the average, the person of ordinary firmness, to self-censor themselves so that they can continue to access. How do we know that? Is that just we assess that kind of ourselves? I mean it sounds like you don't contend your client was deterred at all, but that's not the test. The test is a person of ordinary firmness, whether they would be deterred from filing lawsuits or making complaints or whatever. Do we just kind of, is there any standard by which we go to? I mean, you say that an ordinary person of a person of ordinary firmness would be deterred. Are we supposed to just accept that as true just because you say that? I think at the motion to dismiss stage, Your Honor, drawing all reasonable inferences in plaintiff's favor, that that conclusion can be drawn, and perhaps- So you're just making a conclusory allegation that a person of ordinary firmness would be deterred. We're supposed to accept that? I think that when you look at the nature of their publications and how dependent they are for these sorts of materials to create, you could imagine an investigative journalist trying to publish something without these sorts of materials, and I just think it wouldn't be properly characterized as investigative journalism at that point. And so I think when you look at the nature of what they've previously published, it is not conclusory to find that it meets the standard at summary. Sorry, motion to dismiss, granting all reasonable inferences in plaintiff's favor. Moving to the viewpoint and content discrimination claim, Your Honor. You took retaliation first.  That would indicate to me, I think, that you think that's your best claim. Well, Your Honor, I think we have strong- It's count three is where it's specifically denominated. I misconstrued it? I'm sorry, I think that- Did I misconstrue in saying that retaliation must be your best claim that you think? I think that all our claims are equally strong, Your Honor, yes. And just moving to- But you had to get flipped then. You didn't do it in order. You went after the count three first. I thought maybe it would help frame the rest of the discussion, just the way that the test is laid out, and retaliation might be helpful. But I think they're equally strong. Under viewpoint and content claim, we would begin by noting that a valid First Amendment claim can derive from the government's denial of records. Under Sorrell v. IMS Health of the Supreme Court and Poussar v. Kogan of this court, in the Fourth Circuit, it's held that placing suspect conditions on accessing government information can present a valid First Amendment challenge. Here, defendants did so with police misconduct records. And under both the viewpoint and content discrimination claims, those were the vehicles and the medium by which they engaged in the discrimination. Under the viewpoint claim, there's notice of plaintiff's views, as we previously discussed Mr. Soderberg's status as a journalist on these issues, but also Ms. Figueroa is a very similar journalist in this community, regularly reporting on this material. And she identified herself as such in her request for records. Open Justice Baltimore maintains the previously discussed website, and Ms. Weldon of the law department, one of the defendants, has explicitly asked that they take down information from that website. With this notice in mind, and applying the motion to dismiss standard, under this court's standard in International Association of Machinists v. Haley, the defendants must show an obvious alternative explanation for each alleged actions. Is the information that was asked to be removed the names of, the specific names of people? I believe that's correct, Your Honor. I would have to, we can on rebuttal confirm. The request to take down information, what substantive information? It was identifying information about individuals? I can't answer that with absolute certainty right now. I think that that is among the information, but we're using that just to establish notice of the website itself, that takedown request. We would note comparator evidence exists here, and begin with the fact that across 580 requests and data revealed by the police department itself, defendants took eight times as long to respond to media requests compared to state's attorneys and law enforcement. And as to Open Justice Baltimore, comparing Michael Fortini, who is an associate at a private law firm with no history of criticizing the department, he was given a file on two officers within six months, whereas Open Justice Baltimore was given only a partial version of a file in nearly nine months. The district court says, well, that's not really a fair comparator. You have 18 requests. They're very broad. Maybe within it you can pick out something that's narrow, and that might maybe coincide a little bit with the comparator you talk about. But you've essentially compared apples and oranges, and that's not how comparator evidence works, even at a motion-to-dismiss stage. What's your response to that? We would respond that that request, that comparator evidence that you just addressed is one of multiple, and we would revert and emphasize again the data and also comparator evidence for Mr. Soderberg and Ms. Figueroa, that all together at the motion-to-dismiss stage. But the data doesn't go request by request, right? In this case, again, the district court says you've got all these requests that are so broad. Are we able to look then at kind of conclusory data that doesn't parse it out and say that you've made a plausible comparison? We believe with all reasonable emphasis drawn in our favor that that can be done, but we'd also briefly mention, comparator evidence aside, that there's other evidence indicative of discrimination here. For example, a fee waiver was previously to be granted to cover what was then discovered, a production that was reduced in scope upon investigation into the scope of production. And when that fee waiver was found to cover full cost, defendants refused to honor it when they realized plaintiffs would get that production for free. So comparators aside, we believe that the additional evidence substantiates the claim. What request was that? Can you just tell me, was that to a particular officer, or can you just tell me what that was about real quick? I know you've got limited time. Yes, Your Honor. Open Justice Baltimore requested officer misconduct complaints from 2020 to 2021. More detail on this is observable at the complaint joint appendix page 19 and as well as joint appendix page 81 to 89. If I could just go to the municipal liability argument with my time remaining, I would note that Monell liability can be established against municipal defendants here, the police department, and the city, and that there is no heightened pleading standard for Monell liability, which the district court correctly stated at joint appendix 685. This court has affirmed this in Owens v. Baltimore City State's Attorney's Office in saying that the recitation of facts to support such a claim need not be particularly detailed, nor the chance of success be particularly high. Applying that here, plaintiffs have alleged a condemnation theory for Monell liability in that there is a widespread practice that constitutes a custom with force of law, being the obstruction of production. This length of custom is long. It dates back to 2019, which is pre-COVID and pre-Anton's Law. You can see in the record the sort of obstruction engaged before those events unfolded. And then just briefly to note that policymakers can be found to have actual or constructive knowledge and deliberate indifference in this custom via the extent of communication between employees and plaintiffs. I know I'm over time. If I could just briefly finish this thought. Go ahead. Thank you, Your Honor. The appendix is chock full of communications revealing these obstructions by both the police department and the city. So to the extent that constructive knowledge and deliberate indifference at the motion to dismiss stage is shown by employee misconduct, plaintiffs have exceeded, I believe, the standard at this stage. Thank you for your time. Thank you very much for your work. We really appreciate it. Mr. Fox. Your Honor. Good to have you with us, sir.  May it please the Court. Gregory Fox, Baltimore City Law Department, along with my colleague, Michael Redman, on behalf of the appellees. The Court has three avenues here in which they can affirm the District Court's decision to dismiss the First Amendment claims. The first avenue is that the government cannot violate the Constitution by allowing access to only certain records. The second avenue that the Court may go down to affirm the decision is that the government or the appellants did not adequately plead, that the government either discriminated against them or retaliated against them in responding to their PIA requests. And then the third avenue is that the appellants have not adequately pled that a government policy caused their constitutional harm. Is the first ground you made part of the District Court's reasoning? No, Your Honor. The District Court's... Why do you ask us to do something as your first ground for affirming something the District Court didn't do? Just that there is adequate evidence in the record for the Court to... Why don't you tell us why we didn't affirm the District Judge on what she did? She said 12B6. Yes. Both would be a failure to state a claim, would be an adequate basis to dismiss the case on a failure to state a claim. Are you abandoning the District Judge? No. You're saying she's second best? Has she got a better way to do it? And did you present that to her and she ignored it? Yes. All these arguments were presented to the District Court Judge. So you think she cited it on the wrong ground? No, just that she chose the second avenue to dismiss the case. She's decided on what you prefer, so you start out with that. I never had that happen before. Sure. Again, there are three different avenues, all of which can result in a 12B6 dismissal of the case. Well, usually the lawyers come in and say that the District Judge got it right. The District Court did get it right. When they win, which you did. Yes. Again, the District Court got it right. They chose avenue number two and dismissed the case on that basis. There are three separate ways that could be done in this case. You can do it however you want. Go ahead. I'm sorry. I'm happy with either of the three. We'll charge you with that time. Well, that was great. Well, with respect to the first avenue that the court can go down, to plead a constitutional claim under Section 1983, obviously the first thing that has to be pled is a violation of a constitutional right. And what the appellants have alleged here is that the alleged constitutional harm is a denial of access to police misconduct records. And that kind of gets us to the fundamental issue in this case, is that the appellants have a constitutional right to speak and publish without any government interference. They don't have the constitutional right to access certain records. So their claim here that the government has stymied all access to police misconduct records, while it could be a violation under the Public Information Act, would not be a violation under the First Amendment. And that is borne out in the case Hawkins v. KQED, Inc., the Supreme Court case, that essentially says that there is no constitutional right to access government information. And the court specifically says the Constitution is not a Freedom of Information Act. There's another case under the D.C. Circuit. It is the Center for National Security Studies v. the DOJ, which an activist group filed for FOIA violation under the First Amendment and violations of FOIA. The D.C. Circuit discussed the interplay of the First Amendment and FOIA, and they specifically say the First Amendment protects the right to speak. It does not address the right to receive information. So again, the government here is accused of violating the Constitution by saying we're not going to give anyone access to these records that portray the police department in a poor light. Again, it could be a violation of the public information if everything is clear. So does that argument kind of get to the we have these cases like Baltimore Sun and some others that talk about if what is alleged to be a First Amendment violation is actually seeking some discretionary information or right or something like that, that that doesn't amount to a First Amendment claim? I think that's correct, Your Honor. And what you see here is that this lawsuit is an attempt to enforce the Maryland Public Information Act. But does that mean? I mean, let's assume there was direct evidence that they produced that there was a smoking gun that they got that said we're not going to give these folks information because they criticize us, and we're just not going to do that. So direct evidence that you're not producing because of their viewpoint or what they've done. You're saying that's not constitutionally problematic? So there is, and just what has been alleged here is that the government has at large said we're not giving anyone police misconduct. I'm trying to follow what you're saying because you're saying there's no constitutional right to access to information. If that's true, then they could do what I just said, and would your argument still be that that's not unconstitutional? So the court would have to carve out another exception to the Fisara v. Kogan, which is a Fourth Circuit case that carved out one narrow exception to the broad rule is that there's no constitutional right to access information. In that case, a Virginia resident was seeking Maryland records, specifically voter information records, so he could go out and kind of canvass and criticize the opposite of the state prosecutor. And the Fourth Circuit in that case said what he's challenging here is not the right to access information but the conditions on the access here because the Maryland law said only some people can get this information, whereas people who are outside the state of Maryland can't do that. And because these records are so important as a vehicle for speech, that's going to be subject to First Amendment scrutiny. You don't have that here for two reasons. One, because there's no allegation that anyone else with a different viewpoint has received these records for free within 30 days or received them at all. And number two is that these records are not the same vehicle for political speech. Again, the voter rolls were the means by which you could get an address, a phone number, and actually contact people to do your campaigning. Here, no one wanted to talk about those records. They didn't want to publish information about the voter rolls. It was the vehicle to maintain speech. Let me just follow up and make sure I understand your view on this first vehicle, and maybe this is why we're kind of wondering why you're going down that route, but that's your argument. So that case about the voter rolls is an exception, as I recall, to this general rule that you're not entitled to information. And so you would say, I think, back to my question, under Fourth Circuit law, no right to access, there's a limited exception in the case you just described, absent another limitation in the hypo I proposed, no constitutional violation? Correct. And the court would have to make another exception to the general rule that there's no right to access information. But getting to the actual district court's opinion here, going through each of the cases, taking what you have before the court, even on the motion to dismiss, is every conversation with the government between the requesters and the government in the case. And there is no factual support for the allegation that the government considered the content of the record before responding to the request, the viewpoint of the requester before responding to the request, or retaliated against any of the requesters in any way. And so what the appellants have done is essentially said, because of who we are and the types of records that we're requesting, that any violation of the Maryland Public Information Act has to be because of those basis, but didn't support their conclusion with any facts that they put. At the beginning of your colleague's argument, I kind of laid out how I was trying to think about these claims, that if you have a Freedom of Information Act sort of statutory structure that gives the public entity the right to object and redact and seek fees, et cetera, and the requester has a political affiliation that's known, that the denial of the request or the utilization of some of those statutory rights or responsibilities can't on its own be a First Amendment violation. There must be more. And what I suggested that could be more are actual direct evidence of viewpoint discrimination, although you kind of, I think, well, that's number one. Number two, different treatment of similar type of request. Or three, just how much bad faith utilization of the statutory rights. Does that framework, do you agree with that framework subject to your first argument? Yes. And what you have here, if you look at all of the requests, and in the briefs kind of group them into three separate categories, but the categories that haven't been fulfilled, they all involve a dispute under the MPIA's fee waiver statute. And that case is actually pending before the Maryland courts, as the government here would argue, as it should be. So the government here was just exercising its authority under the statute to charge for records when these massive requests come in. Some of these requests were for 3,000 investigatory files. The government was exercising its discretion to work the right it has under the statute to impose fees, and then there's a dispute over whether or not those fees should be waived. But that was sort of a roundabout way to answer the question. Yes, I believe that's a proper framework. And the comparators here, as you sort of alluded to earlier, aren't direct comparators. There's no allegation here that any other requester with a different viewpoint from the appellants received the same records they were requesting for free or for within the statutory limit of 30 days. And, in fact, the comparator evidence seems to suggest that the government is producing records to people that criticize the Baltimore Police Department all the time. The district court highlighted requests from the Washington Post, from the Office of the Public Defender, from the Maryland Dairley Record, specifically from Justin Fender, a reporter with the Baltimore Banner who has written books about the Baltimore Police Department, all receiving their records requests that were different from the records that the appellants have requested here. But there is no one-to-one comparison. Can you help me with the issue you just raised that the Maryland court is looking at this issue of fee acceptance or rejection? What do we do with that? I mean, does that—I mean, the district court, as I recall, relied on that in the first order and said, to the extent we have that issue, I'm dismissing that claim. Is that right? Are you—that would be almost like an abstention sort of thing. But I don't remember really anyone framing arguments in abstention language. Correct. And what the district court did, because this case involves 18 records requests, six of those records requests were already part of state law lawsuits. And the district court said, well, you've split your claims here. You can't sue in state court, have these be pending. These are ones that aren't in state law that we're talking about now. But the main issue of the fees would all resolve all of the dispute here. But then you should be arguing abstention, right? You should say we shouldn't be doing this because it's intertwined with a state court ruling and we should defer. And are you arguing that? That was argued before the district court. That was in our motion to dismiss brief. But the way that the district court made their ruling, we didn't brief it here. Yeah, yeah. So you didn't present an abstention argument on appeal. Correct. No, Your Honor. Okay. And getting to the— Could you have under your other theory that we could affirm on some alternative basis? You brought out an alternative basis right out of the box here. Would that abstention argument be another alternative theory for you? I think it would be, Your Honor. But you abandoned it, right? I mean the other one you argued in your briefs, this one you abandoned. So we can do it. We can overlook your abandoning it. But we'd have to go a further step to answer Judge King's question than the first point, right? Correct. And we did put information in our footnote that— You didn't at that point think much of the abstention. You went to that other theory. Correct. That was different than the one Judge Hollander brought out. Correct. And what we did was just addressing the arguments that were made in the appellant's opening brief. But I did want to talk about two of the requests, which seem to be the main driver for many of these claims. They are the request for the James Diesel file, which we call in our papers request number eight. We numbered them one through 18. Request number what? Number eight. And then request number seven, which is the one discussed about the revocation of the fee waiver. First, to discuss about request number seven, that does fall under the claim splitting issue that the district court raised. That is part of a state law lawsuit where the appellants have already filed under the First Amendment, and the Circuit Court for Baltimore City dismissed that case, or dismissed the First Amendment claims. But more importantly, if you look through the factual record, it's not a revocation of the fees. What happened with this request and with all the requests where there's a dispute over a fee waiver, the government would receive a broad request for records. They would suggest a narrower scope to perhaps fulfill the request, and they would offer these summaries for free. If a requester said, okay, well, we want the full files. We don't want these summary information. The government would then produce a cost letter saying, here's how much it's going to cost to review and produce all of those records that you're requesting. Because of the scope of the request and the burden on the government, we're going to have to send part of the assignment out to a vendor. And that would be what the cost letter would look like. And then the government would, in these cases before the appellants, when a fee waiver was made, the government would waive what they called the internal cost, all the costs to the city and the Baltimore Police Department, and still impose the cost of the vendor to the appellants. And it was that decision. Pass that through. Correct, and the requester would have to pay for the vendor cost. So that decision, when request number seven came in, that was the decision that the government made. They said, we're going to waive our internal cost, and we're going to impose the vendor cost. Through the course of the litigation, it turned out that there were actually probably fewer records that were responsive to the request. So the government said, okay, once you have 3,000 records, it's about 2,000 that are probably responsive. We're going to do the same thing. We're going to waive our internal cost, and we're going to impose our external fee. But because the waiver in the first part exceeded the total cost in the second, the appellants have characterized that as a revocation of the fee waiver. But that's not what happened if you look through the records. This is your argument, and I read about this. This is kind of factual. It's kind of like parsing out, and you may be 1,000% right, but how do we do that at a 12B6? They're saying something. You're saying something. Is that plain from either the complaint or the exhibits to the complaint? Yes, Your Honor. It's plain from the exhibits. So they attached exhibits that essentially untangle it the way you just described?  They conclude that it's a retaliatory action. So that's all part of the complaint? Correct, Your Honor. There's 44 exhibits to the amended complaint. And it's appropriate to be considered in a 12B6? That's correct. I'm sorry. And that was part of the district court's analysis in the second order, as I recall, kind of reasoning the way you just described? Yes, and that's, again, plain from all the exhibits and the amended complaint. So the amended complaint essentially says, we're concluding that there is a revocation which equals retaliation. But when you look at the factual underpinnings to support that conclusion, that's where it falls apart, and that's where the district court was proper in ruling on this on a 12B6. And then request number eight, the request for the James Diesel file. Again, the attempt here is comparing it to a completely different request. But in the pleadings, there is an explanation of why these are not proper comparators. And to go through just a couple of those, number one, the request that the appellants made is much larger than the request that Mr. Mfortini made. They specifically say the summaries of James Diesel file took 80 pages worth of information, whereas the summaries for Mr. Mfortini, the officer that he requested, was just on one page. So here you already have 180th the size of the request. They have alleged that the files that Mr. Mfortini requested had already been produced during discovery, that Mr. Mfortini agreed to reduce the scope of his request. He initially requested two officers. He reduced it down to one. And that he agreed in exchange for seeing those to settle a lawsuit, something the appellants have specifically said that they would not do. So to the court's point earlier, that's not a proper comparator, saying that because Mr. Mfortini got treatment in one way, that that would show viewpoint of content discrimination here. And then just going to what the district court considered for the obvious alternative explanations here, and what the court was talking about earlier, that everything that happened here was a function of the state statute. So there was an influx of requests, 18 massive requests for a huge scope of records, that overwhelmed the government and took the government more than 30 days to respond. The government gave free summaries, and then when the appellants still wanted all the information, the government waived the internal cost and imposed the benefit. So you would agree if the request here, Well, let's assume they just had a narrow request for all the complaints related to Officer X. And the government responded with 45 objections about overbroad and all this sort of stuff that seemed like not way too inapplicable on their face to a request. That would be, would you agree that's the sort of, you know, at least it's plausible that that would be a misuse of those statutory rights, and that could be a plausible claim? Correct. The overarching argument notwithstanding, yes, I believe that's true. And especially because Maryland Public Information Act doesn't permit objections for overbroad and things like that. I'm going back to my civil litigation days that seep in sometimes. Not that I've ever objected to requests. So in conclusion, the district court correctly characterized this as a dispute under a state record statute and dismissed the First Amendment claims. Accordingly, we respectfully request that the court affirm the district court's decision. Thank you. Thank you, Mr. Fox. Appreciate it. Ms. Summers? Good morning, Your Honor. Good morning. May it please the court. First, I would like to clarify an earlier question about whether these requests were already subject to state litigation. Only requests 1 through 4, 6, and 7 have been covered by state courts. However, they still go to show evidence of plausible First Amendment violations in the complaint. And there are 12 other requests that have not yet been litigated. So on that point, Ms. Summers, is your position that even if those 1 through 4, and I forget the numbers, that you agree you're subject to state court litigation, is it your position that you can bring a First Amendment claim contemporaneously with litigating the statute, that you can litigate in state court the statutory issues and then bring a contemporary federal court First Amendment claim for things that are in the state being resolved in the state courts? I would not say that, Your Honor. First, the primary examples of our viewpoint of retaliation claims are in other requests that have not been litigated yet. So that is where most of our focus is on for those claims. And secondly, it goes to show a custom or policy by municipal defendants of First Amendment violations is the purpose of including those requests. So can a custom or a policy exist if all the evidence, all the custom and policy is for your client's request? There has been case law in which that has happened, where a Monell claim has passed the motion to dismiss stage with one plaintiff. For example, in Washington v. Baltimore Police Department, which was a district court case, a single plaintiff with four incidents over seven years did get past the motion to dismiss stage under a Monell claim. Chen v. Mayor, there is a single plaintiff with two incidents. And then Owens v. Baltimore City Law Department, which was a Fourth Circuit case, also had a single plaintiff. So yes, Your Honor. Okay. I would like to continue discussing Monell, but I'd first like to respond to defendants' argument that this should be a state law claim. I'd like to point out that— In the Monell proposition, there's no right to—there's no mandate or right of access to government information or sources within the government's control, period. You recognize that. Correct, Your Honor. We are not asserting— That's Supreme Court authority and a good law. Correct, Your Honor. We are not asserting the absolute right to public information. Instead, this court— That's what that Fusaro case was about that he mentioned. Yes, and I would like to discuss Fusaro because there's language in that case that supports the fact that when the government decides to make information publicly available, it may not— even if there is discretion in how it can disclose that information, it may not discriminate against viewpoints in how it distributes that. But make sure—I don't want to hear your position there, but that case dealt with the argument or the position, the principle that Judge King just mentioned. As a general rule, you're not entitled to this information, but there's some exceptions to that, and that involved an exception involving voter roll information, I think. So how do you get past that? Do you say you fit within Fusaro, or do you say that doesn't apply to these sort of requests? We kind of asked a bunch of questions to your colleague about why he's going this route, but that is Supreme Court law, and we have one exception. Do you buy the underlying principle, and how do you get around it? Yes, Your Honor. Well, first, I do not believe in the briefing the purpose of Fusaro is not to make a factual comparison in the political speech and voter information, but instead, in that decision, on page 254 to 255, this court found and acknowledged Supreme Court case law that restrictions on disclosure of government-held information can burden the expression of First Amendment— burden the expression, in this case, of plaintiffs who have made speech about defendants, and then their access to the information has plausibly been obstructed because of that speech. With my remaining time, I would like to quickly turn to Monell, if I may. I see I'm out of time. Consistent with the way I've been handling things this morning, I'll give you two or three more minutes. Thank you, Your Honor. I appreciate that. Defendants, Aaron's saying that our complaint does not allege Monell liability. First, at this stage, we've plausibly alleged a condemnation theory between JA 13 through 14. We've shown that there's plausibly a widespread practice, so permanent, well-settled, as to constitute a custom of obstructing records. Not just that records have been denied, but that fees have been imposed arbitrarily, communications have been delayed, there's been failures to respond, and more to obstruct access to records. We've alleged that policymakers had actual or constructive knowledge and exhibited deliberate indifference to this custom through discussing the actions of the law departments, Ms. Lisa Walden and Mr. Salisbury, on pages 11, 13 through 14, 17, and more, and constructive knowledge held by the Baltimore Police Department through discussing communications with the document compliance coordinator, and that's discussed on JA 16 through 17 and JA 15. So this custom is fairly attributable to the municipal defendants, and plaintiffs can plausibly establish an affirmative link between this custom of obstructing records and it violating the First Amendment rights of plaintiffs. If there are no further questions, we respectfully ask this court to reverse and remand the lower court's decision. Thank you, Your Honor. Thank you. Thank you, and we particularly appreciate the work of the Vanderbilt Clinic, and it's good to have you here. It's a good experience for you. It's a good experience for us. And this case will be taken under advisement, and we will adjourn court, Madam Clerk, until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, A. Marvin Quattlebaum Jr., Henry F. Floyd